UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MALCOLM CRUNK, et al.                                                    PLAINTIFFS

v.                                              CIVIL ACTION NO.  3:06CV-609-DW

DEAN MILK CO., INC., et al.                                             DEFENDANTS

## MEMORANDUM OPINION

        This matter is before the Court to consider the motion for summary judgment (DN

38) and amended motion for summary judgment (DN 76) filed by Dean Milk Co. LLC (Dean) in

this personal injury action brought by Plaintiffs Malcolm and Chammie Crunk.  The Crunks have

responded to both dispositive motions (DN 51, 80).  Dean has filed a reply (DN 81).

Accordingly, the motions are now ripe for consideration by the Court.[1]


## THE MATERIAL FACTS

        The parties are well-versed in the facts of this action.  The lawsuit essentially

arises from the personal injuries sustained by the Plaintiff, Malcolm Crunk, on November 25,

2005.  On that date, Crunk, a delivery driver for the Frito-Lay Company, was assisting a co-

worker with unloading a delivery truck at the loading dock of a Wal-Mart store located in New

Albany, Indiana, when he was struck in the back by a pallet loaded with Dean milk products.

The accident occurred when another driver who was unloading Dean products from a trailer

---

        [1]  Dean also has filed a separate motion for summary judgment, as intervening defendant,
on the subrogation claim of the Plaintiff Intervenor, Sedgwick CMS (DN 77). The outcome of
this separate motion will be determined by the Court's resolution of the summary judgment
motions filed by Dean against the Crunks, given that Sedgwick stands in their shoes insofar as its
subrogation claim is concerned.  See Avenco Ins. Co. v. Cessna Aircraft Co., 11 F.3d 998, 1000
(11th Cir. 1993); Payne v. Standard ACC Ins. Co., 259 S.W.2d 491, 493 (Ky. 1953).

bearing the Dean Foods name and logo lost control of the pallet he was unloading.  The resulting injuries sustained by Crunk have required Sedgwick, the workers' compensation carrier for Frito-Lay, to pay over $116,500 in workers' compensation benefits to and on behalf of Malcolm Crunk as of February 2008.

The deliveryman for Dean that day was William Armes, an employee of Defendant Quickway Transportation, Inc. (Quickway).  The only reference to Quickway, however, was the lettering on the driver's door of the delivery truck.  No reference to Quickway was included in the shipping invoice or other paperwork, which named only the Dean Milk Company, LLC.  Armes signed the shipping paperwork only on behalf of Dean.  Nowhere on the Dean Foods trailer or on the shipping paperwork was Quickway identified as being the entity responsible for delivery of the Dean products.  In fact, the Wal-Mart loading dock supervisor on the scene in New Albany referred to Armes as the "Dean's man," or "Dean's deliveryman."

Unknown to the Crunks or to the Wal-Mart supervisor, Armes was *not* a contractual employee of Dean Milk Company, LLC, at the time of Malcolm's accident.  Despite the Dean logo on the trailer and the delivery paperwork, Armes, in fact, was an employee of Quickway.  In September of 2003, Dean's predecessor, Dean Milk Company, Inc., contracted with Quickway to transport and deliver Dean products throughout the United States pursuant to a Dedicated Transportation Agreement.  The agreement expressly provided in paragraph 7 that Quickway would perform all services for Dean "as an independent contractor, and neither Quickway nor any of its employees is an employee of, nor a joint venturer with, ... [Dean]." (DN 38, Exh. 3, p. 2 ¶ 7).

The same provision of the transportation agreement continued to provide that,

2

"Quickway shall have exclusive control and direction of the persons operating and maintaining the equipment or otherwise engaged in the performance of any of its services pursuant to this agreement." (Id.).  It provided that Quickway would be responsible for all taxes and equipment in connection with the services performed by it.  Additionally, Quickway had no authority to bind Dean to any contractual or legal obligation.  (Id.)

Pursuant to Appendix A of the transportation agreement, Quickway initially agreed to provide 27 full-time drivers and 27 tractor cabs.  It agreed to hire and train all of its new personnel and to pay all benefits, workers' compensation, payroll taxes, holiday and vacation pay for its full-time employees including the 27 drivers.  (DN 38, Exh. 3, Appx. A, p. 1, ¶ 1).  Dean agreed to provide the trailers, the required documentation for transportation of its products, material handling equipment for unloading and securing them, and load its dairy products for transportation.  (Id.).  The parties agreed that Quickway drivers would unload Dean products upon delivery, and that Quickway would be reimbursed at a specified rate for its fuel costs.  The parties assumed Quickway would make 19,032 delivery stops per year while delivering Dean products pursuant to the agreement for an estimated total mileage of 2,440,360 miles annually.  Finally, they agreed that Quickway would remain the owner of the equipment it provided, i.e., 27 tandem axle tractors, at the conclusion of the 3-year agreement.  (Id.).

The Crunks filed suit against the original Dean Defendants[2] in the Circuit Court of Jefferson County, Kentucky, on November 6, 2006, in Malcolm Crunk, et al. v. Dean Milk Company, Inc., et al., Case No. 06-CI-09891.  The original complaint did not name Quickway

_____

[2]  The Crunks originally sued not only the Dean Milk Company, LLC, but also Dean Milk Company, Inc., and Dean Foods Company.  The latter two entities have been dismissed from the lawsuit by agreement.

Transportation.  Instead, the complaint mistakenly alleged that driver Armes was an employee of the Dean Defendants.  Based on this mistake, the Dean Defendants filed a motion for summary judgment in July of 2007, seeking the dismissal of all claims asserted by the Crunks based on the argument that Dean could not be held liable for the alleged negligence of an independent contractor.

While this motion remained pending, the Court permitted the Plaintiffs to conduct additional discovery to determine the appropriate employment status of the driver, William Armes, at the time of the accident (DN 40).  Sedgwick moved to intervene to file its third-party complaint on its subrogation claim (DN 43, 45).  The Crunks moved the Court to amend their complaint to add Quickway as a party Defendant and to add certain claims of vicarious liability against the Dean Defendants.  Over the objection of the Defendants, the Court granted Sedgwick leave to file its intervening complaint (DN 61).  The Court also granted the Crunks leave to amend their complaint to add Quickway as a party and the new claims for vicarious liability against the Dean Defendants (DN 62).  Among the newly added theories, the Crunks alleged that Dean was liable based on theories of ostensible agency and joint venture. The Crunks also claimed to be third-party beneficiaries of the contract between Dean and Quickway.  Finally, they included a direct claim of negligence against the Dean Defendants for their alleged failure to provide proper material handling equipment for the safe unloading of the milk pallets, or to properly train the individuals using such equipment.

After the Crunks filed their first amended complaint, Dean filed its amended motion for summary judgment (DN 76), along with the earlier-mentioned motion for summary judgment against Sedgwick (DN 77).  The gravamen of both motions is that the undisputed

4

material facts fail to establish any vicarious liability of Dean for the alleged negligence of

Quickway driver Armes and further fail to support a direct claim for negligence against Dean.

The Crunks' position in a nutshell is that genuine issues of material fact preclude the entry of

summary judgment in Dean's favor pursuant to Rule 56(c).  With this background in mind, the

Court turns first to the standard for summary judgment.


## THE SUMMARY JUDGMENT STANDARD

While the parties may vigorously dispute the question of whether a particular

claim of the Plaintiffs is subject to dismissal under Rule 56(c), the standard for summary

judgment under the Rule is now established beyond serious debate.  Under the Rule, summary

judgment will be proper if the pleadings, depositions, answers to interrogatories and admissions

on file, together with any affidavits, show that no genuine issue as to any material fact exists, and

that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).

The party who files a motion for summary judgment bears the initial burden to

show that no genuine issues of material fact exist.  Celotex Corp. v. Catrett, 477 U.S. 317, 322,

23 (1986); Yeschick v. Mineta, 521 F.3d 498, 502 (6th Cir. 2008).  This burden may be

discharged by "pointing out ... an absence of evidence to support the nonmoving party's case."

Celotex Corp., 477 U.S. at 325; Cincinnati Newspaper Guild v. Cincinnati Inquirer, 863 F.2d

439, 443-44 (6th Cir. 1988).  Once the moving party has met this initial burden, the nonmovant,

after adequate time for discovery, may not rest on its pleadings to defeat the motion, but instead

must identify specific material facts on which a reasonable juror could return a verdict for the

nonmovant on the challenged claim or claims.  Matsushita Elec. Industries Co. v. Zenith Radio

Corp., 475 U.S. 574, 587-88 (1986).

In this respect, the inquiry on a motion for summary judgment is similar to the directed verdict inquiry - - whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); McKee v. Cutter Laboratories, Inc., 866 F.2d 219, 220 (6th Cir. 1989).  The production of a mere "scintilla" of evidence by the nonmovant will not be sufficient to defeat an otherwise proper motion for summary judgment. Id.  When determining what particular facts are deemed to be material for the purpose of the Rule, the Court will look to the substantive law that governs the claim or claims under consideration.  See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476-81 (6th Cir. 1989) (extended discussion of the summary judgment standard).

As Judge Bertelsman explained in the Street decision, the trilogy of Celotex, Matsushita, and Anderson have ushered in a "new era" in summary judgment jurisprudence under which the federal courts have enhanced discretion to grant summary judgment.  No longer need they independently search the record merely to deny a motion for summary judgment based upon some "metaphysical doubt as to the material facts."  Street, 886 F.2d at 1480 (citing Matsushita, 106 S. Ct. at 1356).  Summary judgment will be appropriate on a given claim when the facts, viewed most favorably to the nonmovant, would not permit a reasonable juror to return a verdict in the nonmovant's favor.

## LEGAL ANALYSIS

**A.      Independent Contractor or Employee.**

The first question the Court addresses is whether the undisputed material facts establish the employment status of driver William Armes.  Dean maintains that Armes is clearly an employee of Quickway, which by the terms of the Dedicated Transportation Agreement is itself an independent contractor.  The Crunks, on the other hand, maintain that genuine issues of material fact preclude summary judgment on the employment status of Armes.  While he may nominally be the employee of Quickway, an independent contractor, the reality of the situation, according to the Crunks, is that Armes was acting on November 22, 2005, as a *de facto* employee of Dean at the time of the accident.  Relying on Decker v. Glasscock Trucking Service, Inc., 397 S.W.2d 773, 775 (Ky. 1965), the Crunks conclude that a reasonable juror could find that Armes was acting as a Dean employee when he lost control of the pallet that day at Wal-Mart.

The substantive law of Kentucky, by agreement of the parties, governs the resolution of this dispute.  The general principles of employer vicarious liability are well-established in Kentucky.  See Williams v. Ky. Dept. of Ed., 113 S.W.3d 145, 151-52 (Ky. 2003). In Kentucky, "A principal is vicariously liable for damages caused by tort of commission or omission of an agent or subagent, other than an independent contractor, acting on behalf of and pursuant to the authority of the principal."  Id. (citing Wolford v. Scott Nickels Bus Co., 257 S.W.2d 594, 595 (Ky. 1953).

The traditional factors that determine whether an individual is an employee or an independent contractor are contained in the Restatement (Second) of Agency, § 220(2).  See

<u>Kentucky Unemployment Commission v. Landmark Community Newspapers of Kentucky</u>, 91 S.W.3d 575, 579-80 (Ky. 2002).  The nine factors identified in the Restatement were first discussed by the Supreme Court of Kentucky in the benchmark decision of <u>Ratliff v. Redmon</u>, 396 S.W.2d 320, 324-25 (Ky. 1965).  The test of <u>Ratliff</u> to determine whether an individual is an independent contractor or employee requires a court to consider:

(1) the extent of control which, by agreement, the master may exercise over the details of the work;

(2) whether or not the one employed is engaged in a distinct occupation or business;

(3) the kind of occupation - - whether the work is done under the direction of the employer or by a specialist without supervision;

(4) the skill required in the particular occupation;

(5) whether the employer or the workman supplies the instrumentalities, tools and place of work for the person doing the work;

(6) the length of time for which the person is employed;

(7) the method of payment, whether by the time or by the job;

(8) whether or not the work is part of the regular business of the employer; and

(9) whether or not the parties believe they are creating the relationship of master and servant.

<u>Id</u>. at 324-25.

This 9-factor test of <u>Ratliff</u> subsequently was refined by the Supreme Court of Kentucky in <u>Chambers v. Wooten's IGA Foodliner</u>, 436 S.W.2d 265, 266 (Ky. 1969) to focus on the following four factors: (1) the nature of the work as related to the business generally carried

on by the alleged employer; (2) the extent of control exercised by the alleged employer; (3) the professional skill of the alleged employee; and (4) the true intentions of the parties.  Id.  All of these factors should be considered in the legal analysis.  No one factor is deemed to be determinative.  Each case must be decided on its own particular facts.  See Landmark Community Newspapers, 91 S.W.3d at 579-80 (citing Locust Coal Co. v. Bennett, 325 S.W>2d 322, 324 (Ky. 1959)).  Accordingly, while at one time the Kentucky courts considered the chief criteria to be the right to control the details of the work, "We do not believe this factor is of greater importance than the others."  Id.

        The question of whether an individual is an employee or an independent contractor will be considered to be one of law when it rests on facts that are substantially undisputed; the question, however, will be a question of fact if the determination of such status rests on facts that are materially disputed.  Uninsured Employer's Fund v. Garland, 805 S.W.2d 116, 117 (Ky. 1991).  Here, no genuine issues of material fact exist on this question.  The facts related to the contractual relationship between Dean and Quickway are entirely undisputed.  Because no dispute exists, determination of whether the Quickway driver was acting as an employee of Dean is a question of law.

        When the Court looks to the nine factors set forth in Ratliff and the Restatement (Second) of Agency at § 220(2), it must conclude that William Armes acted only as the employee of independent contractor Quickway on the date of the accident that injured Malcolm Crunk.  The majority of the nine factors fall decidedly in Dean's favor in this analysis.  Certainly, both Dean and Quickway intended their relationship to be an independent contractor arrangement given the express language of paragraph 7 of the Dedicated Transportation

9

Agreement.  Second, although Dean did supply the trailers in which to haul its milk products,

Quickway trained and supplied the drivers, the tractors to pull the trailers, the dispatcher, the on-

site operations manager, and the computer system, software and telephone system for the

operation.  Third, Quickway paid all of its drivers' salaries, benefits, workers' compensation,

holiday and vacation pay and payroll taxes.  Fourth, Quickway was entirely responsible for the

maintenance of its tractors and for paying all of the expenses related to hauling Dean's products

except for fuel, which it was reimbursed at an agreed upon rate.  Additionally, Quickway was to

supply all liability and cargo insurance.  Fifth, Dean operated a distinct business, the

manufacture of dairy products for sale, from Quickway, a company involved in the

transportation of goods.

   Although Dean did provide a portion of its property for Quickway to locate its

dispatch office, Dean otherwise did not dictate the place of work or manner in which Quickway

drivers performed their deliveries.  In fact, William Armes testified in his deposition that he had

no contact from Dean after he picked up the pallets of Dean milk products from the company.

He was free to drive in the manner and on the route he chose, so long as he timely delivered

Dean's products to the chosen retailers.  Further, the contract between Dean and Quickway was

not the type of terminable at-will employment contract that ordinarily arises in employer-

employee situations.  Instead, the contract was for a definite term of three years.

   On the other side of the coin, Dean did assemble the pallets for delivery and load

them onto trailers bearing the Dean Foods logo.  Dean also provided all of the shipping

paperwork to the Quickway drivers.  Dean determined where the deliveries were to be made, and

when they should be made.  Such delivery services are not ordinarily the type of specialized skill

that is performed without supervision, as any adult who obtains a commercial driver's license

can engage in such an occupation.  Additionally, Dean paid Quickway on a per-delivery basis

based upon a graduated mileage rate determined by the number of miles driven, along with a

standard per-stop fee and hookup charge (DN 38, Exh. 3, Appx., p. 2, Schedule of Charges).

Examination of all of these factors shows that neither party is unequivocally

favored under the Ratliff test.  Nevertheless, the balance falls heavily in favor of Dean and its

argument that Quickway stands as an independent contractor.  The Court in reaching this

conclusion does not focus solely on the expressed intent of the parties in their agreement, as the

Crunks are correct in the notion that the terms of such an agreement will not control if they fly in

the face of reality.  See Kentucky Unemployment Ins. Commission v. Landmark Community

Newspapers of Ky, 91 S.W.3d 575, 581 (Ky. 2002) (Newspaper carriers, although designated as

independent contractors in their employment agreements, were employees where the newspaper

company was involved in the business of newspaper delivery, hired the carriers, controlled the

nature of their work and how it was performed); Purchase Transportation Services v. Estate of

Wilson, 39 S.W.3d 816, 818-19 (Ky. 2001) (where radio cab company set the decedent's

schedule, dispatched all her calls, set the rates she could charge to customers and was solely

involved in the business of providing a taxi service, the decedent was properly deemed to be an

employee despite the agreement that clearly intended to create an independent contractor

arrangement).

Unlike Purchase Transportation Services and Landmark Community Newspapers,

the facts in the present case show that Dean was not involved in the business of transporting

goods in interstate commerce by commercial vehicles.  Instead, Dean was involved in the

business of manufacturing and selling milk products. This feature alone materially distinguishes the present case from what occurred in Purchase Transportation Services and Landmark Community Newspapers.  The same is true for the Glasscock Trucking Service case earlier cited.

Additionally, while Dean had some limited control in the sense that it provided the milk products, loaded them onto its trailers and identified the locations for delivery, once Quickway left the lot, its drivers were entirely free to choose their own route and travel in the manner in which they determined appropriate.  They were not required to wear a Dean uniform, nor were they supervised in any respect.  For these reasons, the Court believes the present case to be one appropriate for summary judgment in favor of Dean on the question of whether Quickway and its drivers held the status of independent contractors or employees. The undisputed material facts persuade the Court that at the time of the accident William Armes was working for independent contractor Quickway and not as an employee of Dean.  See Broughton v. Quality Carriers,  2006-CA-000062-WC, 2006 WL 2382747 at *2-3 (Ky. App. Aug. 18, 2006) (driver who owned his own truck, applied to work as an independent contractor, signed an independent contractor agreement, chose the routes for his deliveries, paid for his gas and truck repairs and had no income taxes withheld from his earnings, was an independent contractor not an employee).

**B.      Joint Venture.**

The Crunks raise a series of arguments in the alternative should the Court determine, as it has, that William Armes cannot be considered an employee of Dean at the time of the accident.  They argue that Dean may yet be held vicariously liable for the negligence of

12

Armes in one of several different fashions.  For example, the Crunks hypothesize that the arrangement between Dean and Quickway satisfies the requirements under Kentucky law for a joint venture.  Citing Huff. v. Rosenburg, 496 S.W.2d 352, 355 (Ky. 1973), they maintain that all of the essential elements for a joint enterprise (an agreement for a common purpose with a community of pecuniary interests and equal right of control) are satisfied when one examines the arrangement between the two businesses.  Dean, in contrast, maintains that the Crunks cannot point to any evidence of record that would satisfy the Kentucky common law definition for a joint enterprise, particularly given the absence of the essential requirement of a community of pecuniary interest.

The Court must agree with Dean in this respect.  While the negligence of an individual engaged in a joint activity may be imputed to another under the theory of joint enterprise, a review of Kentucky law as it relates to the undisputed facts, demonstrates that the arrangement between Dean and Quickway cannot reasonably be considered to be a joint venture.  See gen, David J. Liebson,13, Kentucky Practice Series Tort Law, § 11.7 (2007) (discussing the essential elements of a joint enterprise in the context of the Huff decision).

The Restatement (Second)of Torts provides a useful list of the elements of a joint venture at § 491:

> The elements which are essential to a joint enterprise are commonly stated to be for: (1) an agreement, express or implied, among the members of the group (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

Id.

The Supreme Court of Kentucky in <u>Huff v. Rosenburg</u>, 496 S.W.2d at 355, further explained the essential nature of this informal business arrangement.  In the words of the court:

> A 'joint enterprise' rests upon an analogy to the law of partnership. It is something like a partnership for a more limited period of time and a more limited purpose.  It is an undertaking to carry out a small number of acts or objectives which are entered into by association under such circumstances that all have an equal voice in directing the conduct of the enterprise.  The law then considers that each is the agent or servant of the others and that the act of any within the scope of the enterprise is to be charged vicariously against the rest.

<u>Id</u>. (citing Prosser, <u>Torts Fourth Edition</u>, Ch. 12, § 72).

More recently, the Supreme Court of Kentucky noted in <u>Roethke v. Sanger</u>, 68 S.W.3d 352, 364 (Ky. 2002) that among the four factors, element number 3, a community of pecuniary interests, is necessary.  To quote the Court, "there [must] be a sharing of profits and losses" for the arrangement under examination to satisfy this element of the joint venture test. <u>Id</u>.  (Because no express agreement existed that the defendant crane operator would share in the profits earned by his son while working for the injured plaintiff's roofing company, the father and son crane operators were not engaged in a joint venture such that the father could be held liable for the alleged negligence of the son).

When one examines the undisputed facts involving the business relationship between Dean and Quickway, it is readily apparent that no evidence supports the proposition that the two entities were involved in a joint venture.  Rather, the facts of record indicate just the opposite.  No agreement, informal or otherwise, existed between Dean and Quickway for Quickway to share in the profits and losses incurred by Dean through the sale of its milk

14

products.  This distinction alone would preclude Quickway from being part of a joint venture

with Dean.  Rather than share in the profits and losses, Quickway was compensated according to

the formula set forth in Appendix A to the Dedicated Transportation Agreement.  Under the

formula, Dean compensated Quickway with a combination of flat fees for hookup and delivery,

along with a per-mile graduated payment scheme based on the number of miles driven to deliver

Dean's products.

Additionally, Dean and Quickway did not have the equal right to control of

Quickway's delivery of Dean products.  While Dean may have chosen the destination for its

goods and loaded the trailers, once the Quickway drivers drove off of the lot, Dean had no

further contact with them concerning the route taken or manner in which Quickway traveled that

route.  William Armes testified that he had no contact with Dean or its employees during this

time.  Accordingly, the fourth element essential to a joint enterprise, common control, did not

exist, as the undisputed material facts show.

The final distinction revealed by the facts that strongly contradicts the notion of a

joint enterprise between Dean and Quickway is the structured, formal and ongoing nature of

their relationship.  Dean and Quickway entered into a detailed 3-year term contract that

envisioned a national delivery arrangement between the two companies.  This type of enterprise

is 180 degrees apart from the informal, temporary and limited nature of a joint venture or joint

enterprise.  Joint ventures by their nature are highly informal, temporary, usually limited to a

single transaction and involve a mutual sharing of profits and losses that simply is not to be

found in the record in the present case.  See William B. Bardenwerper, 4A Kentucky Practice

Series, Real Estate Law, Section 18.3 (Fourth Edition 2007).  Because the Crunks have failed to

point to evidence of record on which a reasonable juror might find vicarious liability based on such a theory, Dean is entitled to summary judgment on this claim of the amended complaint.

**C.      Third-Party Beneficiary.**

The next theory of liability the Court considers is the Crunks' claim that they are entitled to recover from Dean based on their status as third-party beneficiaries of the contract between Dean and Quickway.  In other words, the Crunks, who are not parties to the Dedicated Transportation Agreement, seek to recover from Dean based on its alleged breach of the same contract.

Ordinarily, "a person who is neither a party nor a third-party beneficiary of a contract, may not enforce it."  Krahwinkel v. Commonwealth Aluminum Corp., 183 S.W.3d 154, 162 (Ky. 2005) (citing Sexton v. Taylor County, 692 S.W.2d 808 (Ky. App. 1985)).  This limit on the ability of strangers to a contract to recover under its provisions arises from the concept of "privity of contract."  See Presnell Construction Managers, Inc. v. EH Construction, LLC, 134 S.W.3d 575, 579-80 (Ky. 2004).  Privity of contract is required in the law as "ordinarily, the obligations arising out of a contract are due only to those with whom it has made; a contract cannot be enforced by a person who is not a party to it or in privity with it, except under a real party in interest statute, or under certain circumstances, by a third-party beneficiary."  Id. (citing 17A Am.Jur.2d, Contracts § 425 (1991)).  See also Sexton, 692 S.W.2d at 810 ("It is the law in this jurisdiction that no stranger to a contract may sue for its breach unless the contract was made for his benefit.").

An exception to the privity of contract requirement exists to permit a third-party

16

beneficiary to bring suit under a contact to enforce a promise made for his benefit even though he is a stranger to the contract and to its consideration.  Id. (citing 17 Am.Jur.2d Contracts § 435 (1991)).  Not every contract, however, will give one who is not in privity thereto a right of action even though such person may have received the benefit from the completion of the contract. B&C Construction Co. v. Grain Handling Corp., 521 S.W.2d 98, 101 (Tex. Civ. App. 1975).  An individual who claims the status of third-party beneficiary must prove that the parties to the contract entered into it with the intent to directly or primarily benefit the individual claiming third-party beneficiary status.  Krahwinkel, 183 S.w.3d at 162 (citing Long v. Reiss, 160 S.W.2d 668 (Ky. 1942)).  It is not sufficient that such an individual show merely that he or she is an incidental beneficiary of the contract.  King v. National Industries, Inc., 512 S.W.2d 29 (6th Cir. 1975); Long, 160 S.W.2d at 668.

The nature of third-party beneficiaries is well explained in the Sexton decision, wherein the Kentucky Court of Appeals writes:

> Parties for whom these contracts are made fall into two classes - - donee beneficiaries and creditor beneficiaries.  One is a donee beneficiary if the purpose of the promisee in making the promise is to make a gift to the beneficiary.  A person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to the beneficiary.

Sexton, 692 S.W.2d at 810 (quoting King v. National Industries, Inc., 512 F.2d 29, 33 (6th Cir. 1975)).  See also B&C Construction Co., 521 S.W.2d at 101-02.

Examination of the record in the present case reveals no evidence on which a reasonable juror could find the Crunks to be third-party beneficiaries of the contract between Dean and Quickway.  No facts of record suggest that either party entered into this contract with

17

the intent that the Crunks benefit directly thereby.  The Crunks cite no proof that would support a

reasonable inference that they are either creditor or donee beneficiaries of the contract.  Dean is

entitled to summary judgment on its behalf on this theory of liability, as well.


D.      **Ostensible Agency.**

The Crunks seek to hold Dean liable for Malcolm's injuries based on the theory

of ostensible agency, which is also frequently known as the theory of apparent authority.  See

David Leibson, 13 Kentucky Practice Series Tort Law, § 11.4 (West 2007) (discussing the

concept of apparent authority).  The Kentucky courts formally adopted the current definition of

an ostensible agent in Paintsville Hospital Co. v. Rose, 683 S.W.2d 255, 257 (Ky. 1985).

In Paintsville the Kentucky Supreme Court turned to the definition of "ostensible

agent" contained in the Restatement (Second) of the Law of Agency, § 267 (ALI 1958), which

provided:

> One who represents that another is his servant or other agent and
> thereby causes a third person justifiably to rely upon the skill or
> care of such apparent agent is subject to liability to the third person
> for harm caused by the lack of care or skill of the one appearing to
> be a servant or other agent as if he were such.

Paintsville Hospital, 683 S.W.2d at 257.

Paintsville Hospital explains that the reliance by the injured plaintiff need not be

proven by express testimony.  It may be proven by circumstantial evidence unless the injured

individual had actual knowledge to the contrary that no such agency relationship existed.  See

Roethke v. Sanger, 68 S.W.3d at 363 (discussing Paintsville Hospital).  To quote again from

Paintsville Hospital:

18

> [E]vidence sufficient to invoke the doctrine has been inferred from circumstances similar to those shown in the present case, absent evidence that the patient knew or should have known that the treating physician was not a hospital employee when the treatment was performed (not afterwards).

Id. at 256.

This quotation from Paintsville Hospital was explained by the Kentucky Supreme Court more recently in Roethke to mean as follows:

> [T]he absence of a requirement of express evidence does not equate with the absence of the requirement of reliance - - and express evidence of reliance is required when there is evidence, as here, that the person claiming ostensible agency knew or should have known that no agency relationship existed with respect to the job being performed.

Roethke, 68 S.W.3d at 364.  See also Williams v. St. Claire Medical Ctr., 657 S.W.2d 590, 596-97 (Ky. App. 1983) (discussing the justifiable reliance of the public in seeking medical services at a public hospital upon the hospital staff as though they were the agents and servants of the hospital).

Dean in its amended motion for summary judgment argues that this claim of the Crunks must be dismissed due to the absence of express evidence of reliance.  Dean reasons that Malcolm Crunk, at a minimum, should have known from the Quickway logo on the tractor cab that William Armes was not a Dean employee, but a Quickway employee instead.  Along these same lines, Dean denies that it ever made any representation, direct or circumstantial, that Armes was acting as its servant or agent in delivering Dean products.  Dean concludes that this claim also is subject to dismissal by summary judgment.

The Court is unable to agree with Dean on this one point.  While the circumstances surrounding the delivery at the time of Malcolm Crunk's injury are themselves

19

undisputed, the inferences that a reasonable juror could draw from such circumstances are not. A reasonable juror might conclude that the circumstances at the time of the accident, considered in their entirety, established an ostensible agency.  To almost all outward appearances, Armes naturally appeared to be a Dean employee by those that he dealt with at Wal-Mart.  In fact, the loading dock supervisor at Wal-Mart, who would be in a better position than most individuals to know, referred to Armes as being the "Deans man" or "Deans deliveryman."  This conclusion is perhaps understandable when one realizes that Armes arrived pulling a trailer that bore the Dean Foods logo in large lettering.  He unloaded pallets containing only Dean milk products and presented paperwork bearing only the identification of the Dean Milk Company.  While Armes was not wearing a uniform that bore the Dean's logo, neither is there any indication that his work clothes identified him as an employee of Quickway.  The only reference at all to Quickway at the time of the events was the relatively small Quickway logo on the driver's door of the truck, as revealed in the photograph contained in the record.

These circumstances raise genuine issues of material fact that a jury must determine.  Essentially, the jurors will need to resolve the question of whether a reasonable person in the circumstances of Malcolm Crunk would have had reason to know that Armes was working for Quickway at the time of the accident.  If so, circumstantial evidence will not be sufficient.  If, however, the jury determines that a reasonable person would *not* have known that Armes was an employee of Quickway, rather than Dean Foods, then the jury must determine whether the circumstantial evidence was sufficient for Malcolm Crunk to justifiably rely on the implied representation that Armes was the agent of Dean.  The Court is not in a position to resolve this question as a matter of law, and indeed, believes that to do so would be inappropriate

20

under the standard of Rule 65(c).[3]   For this reason, the motion of Dean for summary judgment on the claim of ostensible agency is denied.


**E.      Negligence.**

The Crunks allege in their response to the amended motion for summary judgment that Dean was negligent in two respects.  First, they claim that Dean, contrary to its contractual obligation, failed to provide proper material handling equipment to Quickway so that the milk pallets could be safely unloaded at the Wal-Mart on November 22, 2005.  Second, the Crunks argue that Dean failed to adequately train the Quickway drivers in the use of material handling equipment so that the pallets could be safely unloaded.

More generally, the Crunks maintain that Dean owed a duty to Malcolm, a duty owed by every person to every other person, to exercise ordinary care in his or her activities to prevent foreseeable injury.  See Grayson Fraternal Order of Eagles, Aeri No. 3738, Inc. v. Claywell, 736 S.W.2d 328, 332 (Ky. 1987).  On this final point, the Crunks argue that Dean was well aware that the pallets containing its milk products, which its employees assembled and loaded onto Dean trailers for transportation, "were large, heavy and cumbersome, and if not unloaded properly, could injure someone in the vicinity."  (DN 80, p. 7).  Because Dean

---

[3] The Court is aware that Dean argues as a matter of law that Miles Farm Supply v. Ellis, 878 S.W.2d 803, 805 (Ky. App. 1994) extinguishes the Crunks' claim of ostensible agency as a basis to recover against Dean given the existence of the independent contractor relationship between Dean and Quickway. Dean consequently views the ostensible agency argument as being merely duplicative of the Crunks' earlier argument that Armes was acting as an employee of Dean at the time of the accident (DN 81, p. 4).  We do not read Miles so broadly; nor have we found any line of published Kentucky decisions that cites Miles for this view. Accordingly, we reject such a broad reading of the decision.

allegedly knew that other individuals would likely be present at the time that its products were being unloaded, the Crunks conclude that Dean had an independent legal duty to ensure that the pallets of milk were properly unloaded to avoid the risk of foreseeable injury to others present.

Dean maintains that "the record contains no evidence from which it reasonably may be inferred that Dean Milk should have foreseen any harm to Mr. Crunk for the purpose of establishing a legal duty under Kentucky court law."  (DN 76, p. 10).  Dean argues that without proof of *all* of the four basic elements needed to support a claim of negligence (duty, breach, causation and injury), it cannot be subjected to trial on the Crunks' claim of negligence.

Dean also points out that it never supplied any material handling equipment to Quickway drivers, which obtained their own pallet jacks for use in unloading the milk.  William Armes testified that he always used the Wal-Mart pallet jack when unloading Dean products at the New Albany Wal-Mart.  While the Dedicated Transportation Agreement required Dean to provide material handling equipment to Quickway, its failure to do so, even if a breach of the agreement, would not give rise to an action in tort, according to Dean, absent the existence of some independent legal duty owed by Dean to the Crunks.  See Presnell Construction Managers, Inc., 134 S.W.3d at 580 ("Although privity is no longer required to maintain a tort action, 'one who is not party to the contract or in privity thereto may not maintain an action for negligence which consists merely of the breach of the contract.'").

The Court concludes that Dean is entitled to summary judgment on the Crunks' direct claim of negligence given the absence of proof in the record to indicate that Dean itself breached a duty of care owed the Crunks.  The law in Kentucky has long required that an actionable case based upon a claim of negligence requires a showing of duty, breach of duty and

causative damages.  Lewis v. B&R Corp., 56 S.W.3d 432, 436 (Ky. App. 2001).  These

traditional rules were recently explained by the Kentucky Court of Appeals in Lee v. Farmer's

Rural Elec. Co-op. Corp., 245 S.W.3d 209, 211-12 (Ky. App. 2007), wherein the Court writes:

> To recover under a claim of negligence in Kentucky, a plaintiff
> must establish that (1) the defendant owed a duty of care to the
> plaintiff, (2) the defendant *212  breached its duty, and (3) the
> breach proximately caused the plaintiff's damages. See Mullins v.
> Commonwealth Life Insurance Co., 839 S.W.2d 245 (Ky.1992).
> Whether the defendant owed a duty is a question of law for the
> court to decide. Id.; Pathways, Inc. v. Hammons, 113 S.W.3d 85,
> 88 (Ky.2003). Whether the defendant breached its duty is generally
> a question of fact for the jury. See Pathways, 113 S.W.3d at 89.
> The Kentucky Supreme Court has noted that the duty analysis is
> "essentially ... a policy determination[,]" Mullins, supra at 248,
> and "is but a conclusion of whether a plaintiff's interests are
> entitled to legal protection against the defendant's conduct."
> Sheehan v. United Services Automobile Association, 913 S.W.2d
> 4, 6 (Ky.App.1996).

Id.

The law in Kentucky provides that foreseeability of harm is an essential

requirement to impose liability upon an alleged tortfeasor.  Lewis, S.W.3d at 437.  This is so

because, "'[e]very person owes a duty to every other person to exercise ordinary care in his

activities to prevent foreseeable injury'."  Issacs v. Smith, 5 S.W.3d 500, 502 (Ky.

1999)(quoting Grayson Frat. Order of Eagles v. Claywell, 736 S.W.2d 328, 332 (Ky. 1978).

Indeed, in Pathways, Inc, 113 S.W.3d at 98 (Ky. 2003), the Kentucky Supreme Court held that

"'[t]he most important factor in determining whether a duty exists is foreseeability.'" Id.(quoting

Leibson, 13 Kentucky Practice, § 10.3 (1995)).  See, Restatement (Second) of Torts, §

289(a)(1965)("The actor is required to recognize that his conduct involves a risk of causing an

invasion of another's interest if a reasonable man would do so while exercising such attention,

perception of the circumstances, memory, knowledge of other pertinent matters, intelligence and

judgment as a reasonable man would have.").

The Court is unable to find in the record any indication that Dean engaged in conduct that would satisfy the essential elements for a claim of negligence. The possible breach of Dean's contract by its failure to provide material handling equipment to Quickway is irrelevant. Quickway did not use Dean equipment in unloading its trucks. As Armes testified, he always used the pallet jack provided by Wal-Mart to unload his vehicle. Thus, whether Dean was contractually obligated to provide the pallet jack is not a basis on which the Crunks may recover in tort from Dean. The record gives no indication, and the Crunks point to no proof, that the pallets of milk were improperly assembled or improperly loaded onto the truck so as to have caused Armes to lose control of the pallet that he was unloading that day at Wal-Mart.

Ky has adopted the majority rule from U.S. v. Savage Truckline, Inc., 209 F.2d 442 (4th Cir. 1953). The Savage rule provides that when a shipper assumes responsibility for loading the carrier's vehicle, the general rule is that such shipper is liable for any defects that are latent and concealed so that they are not discoverable by ordinary observation of the carrier's agent; but, if the improper loading of the cargo is readily apparent, the carrier will be liable notwithstanding any negligence by the shipper. See Pierce v. Cub Cadet Corp., 875 F.2d 866 at *10 (6th Cir. 1989) (noting that Ky's law of negligence and contributory negligence comports with the rule described in Savage). Because the record is devoid of any facts which indicate that the pallets were not properly assembled or loaded, or that they contained any defects, latent or otherwise, Dean, as shipper, cannot successfully be argued to be negligent with respect to its voluntarily assumed conduct in loading the pallets it assembled onto the Quickway truck in question.

In other words, even if one assumes the existence of a legally independent duty of care running from Dean to the Crunks, a legal issue we do not presently resolve, the record contains no evidence on which a reasonable juror could find a breach of such a duty by Dean. Dean's negligence, if any, must be imputed vicariously by the jury through the sole remaining theory of vicarious liability, the theory of ostensible agency, because the record simply contains no facts on which a reasonable juror could find Dean to be directly negligent based on its own highly limited conduct in the matter.

## CONCLUSION

For the reasons set forth above, the motions of Dean for summary judgment against Malcolm and Chammie Crunk are **GRANTED IN PART AND DENIED IN PART**. The motion is denied as to the claim of the Crunks that Dean is vicariously liable based on the theory of ostensible agency. The motions are granted as to the remaining claims of the Crunks against Dean including their claims of direct negligence, joint venture and third party beneficiary status. These claims shall be dismissed with prejudice by separate order. Based on the same reasoning, the motion of Dean for summary judgment against Plaintiff Intervenor, Sedgwick CMS on its subrogation claim is **DENIED**. A separate order to this effect shall also be entered.

Copies to Counsel of Record